IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERCIS B.V.,

    Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Case No.: 1:19-cv-1226

# COMPLAINT

Plaintiff, MERCIS B.V., ("MERCIS" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for its Complaint hereby alleges as follows:

## INTRODUCTION

1. This action has been filed to combat online trademark and copyright infringers who trade upon Plaintiff's reputation and goodwill and valuable trademarks and copyright by selling and/or offering for sale products, hereinafter referred to as the "MIFFY Products" in connection with Plaintiff's federally registered MIFFY Trademarks. In addition, Defendants are selling unauthorized products that are based on and derived from the copyrighted subject matter created by MERCIS, hereinafter referred to as the "MIFFY Works."

2. Plaintiff is the owner of the MIFFY trademarks, United States Trademark Registration Nos. 2,210,029; 2,393,442; 2,482,597; 4,248,049; 5,516,174; 5,652,014; 5,663,554 and 5,663,610 (collectively the "MIFFY Trademarks") that covers the MIFFY Products. The Registrations are valid, subsisting and in full force and effect. A true and correct copies of the Registrations are

attached hereto as Exhibit 1. Plaintiff is the owner of Copyright Registration No. VA 1-054-563 which has an effective registration date of November 30, 2000, and is attached hereto as Exhibit 2.

3. In an effort to illegally profit from the MIFFY trademarks and copyright, Defendants have created numerous Defendant Internet Stores and design them to appear to be selling authorized MIFFY Products.

4. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation. Plaintiff is forced to file this action to combat Defendants' infringement. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over the creative content and tarnishment of its valuable trademarks and copyright as a result of Defendants' actions and seek injunctive and monetary relief.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing infringing versions of Plaintiff's trademarks and/or copyright. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products that infringe Plaintiff's trademarks and/or copyright. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused substantial injury in the State of Illinois.

## THE PLAINTIFF

8. MERCIS acts as the Sales, Marketing, Design, and Distribution arm of MIFFY products internationally and has a place of business at Johannes Vermeerplein 3, 1071 DV Amsterdam, Netherlands. MERCIS B.V. is a company organized and existing under the laws of the Netherlands.

9. MERCIS is in the business of developing, marketing, selling and distributing MIFFY products. MIFFY was "born" in 1955 and became Dick Bruna's best known and most popular character featuring in more than 123 books. In total they have sold over 85 million copies and led to four separate television series aired in more than 70 countries worldwide, a movie and a wide range of merchandising items such as clothes, toys, stationery and household items featuring the character.

10. MERCIS B.V. is the licensor of all MIFFY products available on multiple online shopping platforms such as:





11. The MIFFY Trademarks have been used exclusively by MERCIS and have never been abandoned. The MIFFY registrations are valid, subsisting, in full force and effect. The registrations of the MIFFY Trademarks constitutes *prima facie* evidence of their validity and of MERCIS's exclusive right to use the MIFFY Trademarks pursuant to 15 U.S.C. § 1057(b).

12. MERCIS has invested substantial time, money and effort in building up and developing consumer recognition, awareness, and goodwill in the MIFFY Products.

13. The success of the MIFFY Products is due in large part to MERCIS's marketing, promotional, and distribution efforts. These efforts include advertising and promotion through MIFFY.com, retailer websites, and other internet-based advertising, print, and other efforts both in the United States and internationally.

14. MERCIS's success is also due to the use of high-quality materials and processes in making the MIFFY Products.

15. Additionally, MERCIS owes a substantial amount of the success of the MIFFY Products to its licensees, consumers, and interest that its consumers have generated.

16. As a result of MERCIS's efforts, the quality of its MIFFY Products, the promotional efforts for its products and designs, press and media coverage, and members of the public have become familiar with thenMIFFY Products, MIFFY Works, and MIFFY Trademarks and associate them exclusively with MERCIS. MERCIS has acquired a valuable reputation and goodwill among the public as a result of such association.

17. MERCIS has made efforts to protect its interests in and to the MIFFY Works and MIFFY Trademarks. No one other than MERCIS and its licensees is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the MIFFY Works or MIFFY Trademarks without the express written permission of MERCIS.

**THE DEFENDANTS**

18. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized MIFFY Products to consumers within the United States, including Illinois and in this Judicial District.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

19. The success of the MIFFY Products has resulted in their counterfeiting and intentional copying. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit MIFFY products to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

20. As recently addressed in the Wall Street Journal, Fortune, and the New York Times, and as reflected in the federal lawsuits filed against sellers offering for sell and selling infringing and/or

counterfeit products on the above mentioned digital marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate. *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba*, MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end- in-sight-for-alibabas-counterfeit-problem/.

21. Upon information and belief, Defendants facilitate sales by designing the Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine MIFFY Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such unauthorized sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Plaintiff has not licensed or authorized Defendants to use the MIFFY Trademarks and copyright.

22. Upon information and belief, Defendants also deceive unknowing consumers by using the MIFFY Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MIFFY Products. Additionally, upon information and belief,

7

Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine MIFFY Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Domain Names owned by Defendants that are the means by which the Defendants could continue to sell unauthorized products.

23. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive infringing operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, many of the unauthorized MIFFY Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the

illegal products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

25. Further, illegal operators such as Defendants typically operate multiple credit card merchant accounts and third-party accounts such as PayPal accounts behind layers of payment gateways so that they can continue operation in spite of any enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore operators regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

26. Defendants, without any authorization or license, have knowingly and willfully infringed the MIFFY Trademarks and copyright in connection with the advertisement, distribution, offering for sale, and sale of illegal products into the United States and Illinois over the Internet. Each Defendant Internet Store offers to ship to the United States, including Illinois, and, on information and belief, each Defendant has offered to sell infringing products into the United States, including Illinois.

27. In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to

MERCIS: infringed and counterfeited the MIFFY Trademarks; infringed Plaintiff's copyright; committed unfair competition; and unfairly and unjustly profited from such activities at MERCIS's expense.

28. Unless enjoined, Defendants will continue to cause irreparable harm to MERCIS.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiff's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Trademarks are a distinctive mark. Consumers have come to expect the highest quality from MERCIS and MIFFY Products offered, sold or marketed under Plaintiff's Trademarks.

31. Without MERCIS's authorization or consent, with knowledge of MERCIS's well-known and prior rights in its MIFFY Trademarks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the MIFFY Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the MIFFY Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

32. Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with MERCIS, in or affecting interstate commerce, and/or have

acted with reckless disregard of Plaintiff's rights in and to the MIFFY Trademarks through their participation in such activities.

33. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the MIFFY Trademarks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by MERCIS, thereby making substantial profits and gains to which they are not entitled in law or equity.

34. Defendants' unauthorized use of the MIFFY Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by MERCIS, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the MIFFY Trademarks.

35. Defendants' actions constitute willful counterfeiting of the MIFFY Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

36. Defendants' continued, knowing, and intentional use of the MIFFY Trademarks without MERCIS's consent or authorization constitutes intentional infringement of MERCIS's federally registered MIFFY Trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

37. As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to MERCIS, their

business, their reputations and their valuable rights in and to the MIFFY Trademarks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which MERCIS has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to MERCIS and its valuable MIFFY Trademarks.

38. Based on Defendants' actions as alleged herein, MERCIS is entitled to injunctive relief, damages for the irreparable harm that MERCIS has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorneys' fees and costs.

## COUNT II
## FALSE DESIGNATION OF ORIGIN, PASSING OFF & UNFAIR COMPETITION
## (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

39. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

40. Plaintiff, as the owner of all right, title, and interest in and to the MIFFY Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

41. Plaintiff's Trademarks are distinctive.

42. Defendants' promotion, marketing, offering for sale, and sale of infringing MIFFY Products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' infringing products by Plaintiff.

43. By using the MIFFY Trademarks in connection with the sale of unauthorized products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized products.

44. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of MERCIS, its MIFFY Products, and MIFFY Trademarks.

46. As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to MERCIS by depriving MERCIS of sales of its MIFFY Products and by depriving MERCIS of the value of its MIFFY Trademarks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to MERCIS and the goodwill and reputation associated with the value of MIFFY Trademarks.

47. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

48. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their unauthorized products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

50. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

51. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT 17 U.S.C. § 501(a)

52. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

53. Plaintiff's copyright has significant value and has been produced and created at considerable expense.

54. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted

14

MIFFY Work, including derivative works. The MIFFY Work is the subject of a valid copyright registration. (Exhibit 2).

55. Upon information and belief, Defendants had access to the copyrighted work through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted work without Plaintiff's consent and engaged in acts of widespread infringement.

56. MERCIS is informed and believes and thereon alleges that Defendants further infringed MERCIS's copyright by making or causing to be made derivative works by producing and distributing reproductions without MERCIS's permission.

57. The trademark and copyright products include a copyright notice advising the general public that the MIFFY Products are protected by the Copyright Laws.

58. Each Defendant, without the permission or consent of the Plaintiff, has and continues to sell online infringing derivative works of the copyright. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

59. Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyright. MERCIS is entitled to disgorgement of Defendants' profits, directly and indirectly, attributable to their infringement.

60. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiff.

61. As a result of each Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504.

62. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of the copyrighted work from which copies can be reproduced should be impounded and forfeited to MERCIS as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to MERCIS, under 17 U.S.C §503.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the MIFFY Trademarks or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized MIFFY Product or is not authorized by Plaintiff to be sold in connection with the MIFFY Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the MIFFY Trademarks;

    d.  further infringing the MIFFY Trademarks and damaging Plaintiff's goodwill;

    e.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the MIFFY Trademarks or which are derived from Plaintiff's copyright;

    f.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the MIFFY Trademarks or which are derived from Plaintiff's copyright;

    g.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale products or inventory not authorized by Plaintiff which bear the MIFFY Trademarks or which are derived from Plaintiff's copyright in the MIFFY Product;

2) Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as eBay, Amazon, iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which bear the MIFFY Trademarks or which are derived from the Plaintiff's copyright, including any accounts associated with the Defendants listed on Schedule A;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which bear the MIFFY Trademarks or which are derived from Plaintiff's copyright in the MIFFY Works; and

   c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index; and

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) For Judgment in favor of Plaintiff against Defendants that they have: a) willfully infringed Plaintiff's rights in its federally registered copyright pursuant to 17 U.S.C. §501; and b)

otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

6) For Judgment in favor of Plaintiff against Defendants for actual damages or other available damages pursuant to 17 U.S.C. §504, at the election of Plaintiff, in an amount to be determined at trial;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

DATED: February 19, 2019	Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
1033 South Blvd., Suite 200
Oak Park, Illinois 60302
Telephone: 708-203-4787
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**